UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE AIKEN<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　　　　　Defendant. | Case No.: 18-CV-908-JLS(WVG)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 9, 10.] |

This is an action for judicial review of a decision by the Acting Commissioner of Social Security, Nancy A. Berryhill ("the Commissioner," or "Defendant"), denying Plaintiff Michelle Aiken supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act") and Social Security Disability Insurance under Title II of the Act. The parties have filed cross-motions for summary judgment, and the matter is before the undersigned Magistrate Judge for preparation of a Report and Recommendation. For the reasons stated below, the Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED.

/ / /

/ / /

# I. OVERVIEW OF SOCIAL SECURITY CLAIM PROCEEDINGS

Pursuant to the Social Security Act, the Social Security Administration ("SSA") administers the SSI program. 42 U.S.C. § 901. The Act authorizes the SSA to create a system by which it determines who is entitled to benefits and by which unsuccessful claimants may obtain review of adverse determinations. *Id.* §§ 423 *et seq.* Defendant, as Acting Commissioner of the SSA, is responsible for the Act's administration. *Id.* § 902(a)(4), (b)(4).

## A. The SSA's Sequential Five-Step Process

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. To qualify for disability benefits under the Act, a claimant must show that (1) he or she suffers from a medically-determinable impairment[1] that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more and (2) the impairment renders the claimant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A); 1382(c)(3)(A).

A claimant must meet both of these requirements to qualify as "disabled" under the Act, *id.* § 423(d)(1)(A), (2)(A), and bears the burden of proving that he or she "either was permanently disabled or subject to a condition which became so severe as to create a disability prior to the date upon which [his or] her disability insured status expired." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). An administrative law judge ("ALJ") presides over the five-step process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (summarizing the five-step process). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process,

---

[1] A medically-determinable physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

the review process is terminated at that step. *Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1994).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. The so-called "severity regulation" dictates the course of this analysis. *Id.* §§ 404.1520(c), 416.920(c); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

An ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1520(c). The ability to do "basic work activities" means "the abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1521(b), 416.921(b).

However, if the impairment is severe, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled so long as the impairment meets or equals one of the listed impairments. *Id.* § 404.1520(d).

If the ALJ does not deem a claimant disabled—but before formally proceeding to step four—the ALJ must establish the claimant's Residual Functional Capacity ("RFC"). *Id.* §§ 404.1520(e), 404.1545(a). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. *Id.* §§ 404.945(a)(1), 404.1545(a)(1). The RFC analysis considers "whether [the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). In establishing a claimant's RFC, the ALJ must

assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. *Id.* § 404.1545(a)(3), (e). If an ALJ does not conclusively determine a claimant's impairment or combination of impairments is disabling at step three, the evaluation advances to step four.

At step four, the ALJ uses the claimant's RFC to determine whether the claimant has the ability to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). So long as a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. *Id.* § 404.1560(b)(3). Conversely, if the claimant either cannot perform or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's evaluation, the ALJ must verify whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. *Id.* § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. However, if the claimant is not able to do other work and meets the duration requirement, the claimant is disabled. *Id.* Although the claimant generally continues to have the burden of proving disability at step five, a limited burden of going forward with the evidence shifts to the SSA. At this stage, the SSA must present evidence demonstrating that other work that the claimant can perform—allowing for his RFC, age, education, and work experience—exists in significant numbers in the national economy. *Id.* §§ 404.1520, 1560(c), 416.920, 404.1512(f).

**B.  SSA Hearings and Appeals Process**

In accordance with Defendant's delegation, the Office of Disability Adjudication and Review administers a nationwide hearings and appeals program. SSA regulations provide for a four-step process for administrative review of a claimant's application for disability payments. *See id.* §§ 416.1400, 404.900. Once the SSA makes an initial determination, three more levels of appeal exist: (1) reconsideration, (2) hearing by an ALJ, and (3) review by the Appeals Council. *See id.* §§ 416.1400, 404.900. If the claimant is not satisfied with the decision at any step of the process, the claimant has sixty days to seek administrative review. *See id.* §§ 404.933, 416.1433. If the claimant does not request

review, the decision becomes the SSA's—and hence Defendant's—binding and final decree. *See id.* §§ 404.905, 416.1405.

A network of SSA field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report and submits those documents to one of the SSA's field offices. If the SSA denies the claim, the claimant is entitled to a hearing before an ALJ in the SSA's Office of Disability Adjudication and Review. *Id.* §§ 404.929, 416.1429. A hearing before an ALJ is informal and non-adversarial. *Id.* § 404.900(b).

If the claimant receives an unfavorable decision by an ALJ, the claimant may request review by the Appeals Council. *Id.* §§ 404.967, 416.1467. The Appeals Council will grant, deny, dismiss, or remand a claimant's request. *Id.* §§ 416.1479, 404.979. If a claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court. *See id.* §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the Appeals Council, which may either make a decision or refer the matter to another ALJ. *Id.* § 404.983.

## II. BACKGROUND

### A. Procedural History

Plaintiff is a 57-year-old woman who alleges to be too disabled to work. (AR 156.) On July 3, 2014, Plaintiff protectively filed for Disability Insurance Benefits and Supplement Security Income. (AR 13.) In both applications, Plaintiff alleged her disability began on April 1, 2009. (AR 13.) In August 2014, the SSA denied these initial applications (AR 89-96), and the SSA denied her applications for reconsideration in February 2015. (AR 100-105.) Plaintiff then requested a hearing before an ALJ, which occurred on December 20, 2016. (AR 26-42.) The ALJ issued an unfavorable decision for Plaintiff in February 2017. (AR 10-25.) The Appeals Council denied Plaintiff's request for review of

the unfavorable decision in March 2018. (AR 1.) In May 2018, Plaintiff filed the Complaint in the instant case seeking review of the AJL's decision.

### B. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ that she suffers from scoliosis, which prevents her from working. (AR 32.) She reported she was in pain all the time, but she took a muscle relaxer that helped with the pain. (AR 32.) However, because the medication made her drowsy she took it at night and was not able to feel the therapeutic effects during the daytime. (AR 33.)

Additionally, Plaintiff testified that her heart "fluctuates" and wears her out. (AR 33.) This caused her to become tired easily, and she suffered the occasional headache. (AR 34.) Plaintiff also claimed to have numbness in her right hand and left arm and experiencing a burning needle sensation in her feet. (AR 39.) She believed this was caused by her heart and spine issues. (*Id.*)

### C. Examining Doctor

"In order to understand the nature and scope of the claimant's impairments and their potential impact on her ability to perform work-related tasks," a consultative examination of Plaintiff by Amy L. Kanner, M.D. was scheduled. (AR 16.) Plaintiff underwent a Complete Internal Medicine Evaluation by Dr. Kanner. (*Id.*) Dr. Kanner's diagnostic findings were as follows: lower back pain with severe scoliosis, history of mitral valve prolapse, atypical chest pain, neck pain, numbness of all limbs, history of anemia, and swelling of the hands. (AR 17.) Based on these limitations, Dr. Kanner opined that Plaintiff "could perform a wide range of sedentary work." (*Id.*) However, she stated Plaintiff should be restricted from "climbing ropes, ladders or scaffolds, be around moving machinery or unprotected heights." (*Id.*) The ALJ gave Dr. Kanner's assessment great weight. (*Id.*)

### D. ALJ's Findings

At step one of the sequential evaluation process described above, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2012, the amended onset date. (AR 15.) At step two, the ALJ found Plaintiff had severe impairments of (1) a

spinal impairment and (2) a cardiac impairment. (*Id.*) At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Between steps three and four—in his RFC assessment—the ALJ found Plaintiff could perform a wide range of sedentary work as defined in 20 C.F.R. Part 404.1567(a) and 416.967(a). (AR 18.) Specifically, Plaintiff is able to lift and carry up to 10 pounds frequently or occasionally. (*Id.*) Plaintiff is able to sit up to 6 hours in an 8-hour workday with normal breaks. (*Id.*) Plaintiff is able to stand or walk up to 2 hours in an 8-hour workday. (*Id.*) Additionally, Plaintiff can bend, stoop, climb, crouch, crawl, kneel or balance on occasion but should not climb ropes, ladders or scaffolds. (*Id.*)

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a "telephone solicitor." (AR 19.) Comparing Plaintiff's residual function capacity with the physical and mental demands of this work, the ALJ found Plaintiff is able to perform this job. (AR 20.)

### III. STANDARD OF REVIEW

A district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV. DISCUSSION

Plaintiff challenges the ALJ's adverse decision on two grounds. First, she contends the ALJ erred in posing an incomplete hypothetical to the vocational expert, thus

invalidating the vocational expert's testimony on Plaintiff's ability to perform past relevant work. Second, Plaintiff contends the ALJ incorrectly assessed her RFC by relying too heavily on Dr. Kanner's evaluation. The Court addresses each assignment of error in turn.

**A.  Although the ALJ Erred in Failing to Include All of Plaintiff's Limitations in the Hypothetical Posed to the Vocational Expert, the Error was Harmless**

Plaintiff argues the ALJ failed to pose a hypothetical question to the vocational expert that contained all of Plaintiff's limitations. Defendant contends that the hypothetical question was proper, and any minor discrepancy was harmless. The Court agrees with Defendant.

### 1.  Legal Background: Vocational Expert Testimony Evaluation

"The ALJ's depiction of the claimant's disability must be accurate, detailed and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). Based on the ALJ's hypothetical, "[t]he vocational expert then responds to hypothetical factual scenarios and opines, by testifying on the record, to what jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the claimant's region or in other regions of the economy to support a finding of 'not disabled.'" *Epps v. Astrue*, No. 09CV1380-WQH(WVG), 2010 U.S. Dist. LEXIS 95519, at *28 (S.D. Cal. Aug. 13, 2010) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

### 2.  Vocational Expert Testimony

Here, the ALJ found Plaintiff had the residual functional capacity to perform a wide range of sedentary work, and more specifically, is able to lift and carry up to 10 pounds frequently or occasionally, sit up to 6 hours in an 8 hour work day, walk up to 2 hours in a 8 hour work day, and bend, stoop, climb, crouch, crawl, kneel, or balance on an occasional basis. (AR 18.) Moreover, Plaintiff should avoid climbing ropes, ladders, or scaffolds and

should not be exposed to unprotected heights or dangerous machinery. (*Id.*) However, the ALJ asked the vocational expert the following incomplete hypothetical question:

> If we find somebody with the claimant's age, education, past work who can perform a full range of sedentary work with occasional postural capabilities and let me just further clarify that. . . . And we need to avoid unprotected heights and dangerous moving machinery. Can past work or other work be performed?

(AR 40-41.) This hypothetical did not completely reflect Plaintiff's residual functional capacity, as it failed to include Plaintiff's inability to lift more than 10 pounds, sit up to 6 hours and walk up to 2 hours a day in an 8-hour work day. In addition, it did not mention Plaintiff's need to avoid climbing ropes, ladders or scaffolds. The vocational expert responded that the person from the hypothetical could perform their past work as a telephone solicitor. (AR 41.) At face value, the ALJ erred by not including the missing functional capabilities identified above. However, as explained below, because the ALJ used shorthand terms of art that are widely understood by vocational experts in Social Security cases, this error was harmless.

### 3. Harmless Error

Harmless error applies in the Social Security context. The error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006), or where it is "clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *see Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see also Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). Moreover, "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1055-56.

Here, the ALJ's error was harmless. Although the hypothetical and RFC were not a verbatim match, there was no "clear discrepancy" as Plaintiff claims. The hypothetical question stated that the person could "perform a full range of sedentary work." The Social Security Rulings define "sedentary work" as "involving lifting no more than 10 pounds at a time" and "periods of standing or walking should generally be limited to 2 hours of an 8-hour work day, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10. Thus, when the ALJ told the vocational expert that Plaintiff could perform the full range of "sedentary work," the ALJ implicitly incorporated the specific exertional limitations set forth in the Social Security Rulings for "sedentary work."

The only possible remaining "discrepancy" between the hypothetical and Plaintiff's RFC was the hypothetical's omission of the specific limitation of not climbing of ropes, ladders, or scaffolds. However, Plaintiff specifically stated her past work as a telephone solicitor required no climbing of any kind. (AR 204.) In addition, the Dictionary of Occupational Titles states that climbing is "not present" and the "activity or condition does not exist" for telephone solicitor jobs. DOT 2.99.357-014, 1991 WL 672624. Thus, the ALJ's error in excluding Plaintiff's climbing limitation was harmless because the vocational expert's conclusion that Plaintiff could perform her past work as a telephone solicitor did not require her to be able to climb, and the ALJ would have reached the same conclusion had this limitation been expressly included in the hypothetical. As a result, the exclusion of this limitation was harmless because it was inconsequential to the ultimate nondisability determination.

## B.  ALJ Properly Relied on the Examining Physician's Opinion

Plaintiff next challenges the ALJ's RFC finding, claiming that the ALJ improperly weighed the opinion of consultative examiner Amy Kanner, M.D. because her examination was not supported by the record as a whole. Plaintiff contends that "[w]hile the evaluation seemed thorough, Dr. Kanner was not privy to any of Ms. Aiken's medical records, and findings from the evaluation conflicted with recorded evidence." (Doc. No. 9 at 16.) Plaintiff claims this led to an incorrect assessment of her RFC since the RFC finding was

largely based on Dr. Kanner's opinion. The question then is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

Upon reviewing the record, this Court concludes that the ALJ appropriately evaluated the record as a whole and properly weighted Dr. Kanner's findings and opinion, which was supported by Plaintiff's medical history.

### 1. The Medical Record Supports Dr. Kanner's Assessment

Dr. Kanner performed a complete internal medicine evaluation of Plaintiff in August 2014. (AR 335-43.) At that time, Plaintiff self-reported back, neck and chest pain, numbness of arms, fingers and legs, abnormal sensation in hips and feet, and heart murmur/mitral valve prolapse. (AR 335.) Dr. Kanner observed Plaintiff was a well-developed female in no acute distress, that she could get in and out of a chair without difficulty, and that there was no apparent ataxia or dyspnea.[2] (AR 338.)

Upon physical examination, Dr. Kanner noted tenderness to palpation at the base of her lumbar spine, but no cerebrovascular tenderness, no muscle spasm, normal muscle tone, negative straight leg raising test in both sitting and supine positions, and normal range of motion of the back. (AR 339-40.) Further, Dr. Kanner noted no cyanosis, clubbing, or edema, and intact peripheral pulses in the upper and lower extremities.[3] Neurologically, Plaintiff had good motor tone, good active motion and normal motor strength. (AR 341.)

---

[2] "Ataxia describes a lack of muscle control or coordination of voluntary movements, such as walking or picking up objects." https://www.mayoclinic.org/diseases-conditions/ataxia/symptoms-causes/syc-20355652. Dyspnea is the shortness of breath. https://www.webmd.com/lung/shortness-breath-dyspnea#1.

[3] "Cyanosis is a bluish color in the skin, lips and nail beds caused by a shortage of oxygen in the blood." http://www.childrenshospital.org/conditions-and-treatments/conditions/c/cyanosis. "Clubbing is changes in the areas under and around the toenails and fingernails that occur with some disorders." https://medlineplus.gov/ency/article/003282.htm.

She also had intact sensation, normal reflexes as well as normal gait, could stand on heels and toes, and walk across the exam room without the use of an assistive device. (*Id.*)

Although Dr. Kanner did not review Plaintiff's medical records for her assessment, her findings above were consistent with Plaintiff's overall medical history. As the ALJ noted (AR 15-17, 19), Dr. Kanner's assessment was supported by the generally normal diagnostic, physical and neurological examination findings, including the doctor's own findings. For example, a July 2014 x-ray examination of Plaintiff's thoracolumbar spine showed only moderate degenerative changes of the right facet joints of the lumbar spine. (AR 15, 616.) Moreover, a November 2014 CT scan of Plaintiff's lumbar spine revealed no acute abnormality of the lumbar spine, degenerative changes of the lumbar spine, and no significant spinal canal or neuroforaminal narrowing at the disc levels. (AR 16, 615.) The Ninth Circuit has upheld ALJ decision under similar circumstances where diagnostic x-rays did not reveal severe spinal conditions. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ properly discounted the claimant's allegations of severe low back pain because "the MRI and x-rays show only mild degenerative disc disease at L5-S1, and mild dextroscoliosis" and there "was no apparent disc herniation or nerve root impingement").

Similarly, Plaintiff's physical examinations reflected generally benign findings. For example, consistent with Dr. Kanner's examination findings discussed above, upon musculoskeletal and neurologic examinations, Plaintiff had no joint pain, swelling or redness, no decreased range of motion, no focal weakness or numbness, normal gait, no cyanosis, clubbing or edema, normal pulses, no sensory or motor deficits, and intact cranial nerves. (AR 352-53, 355-57, 359, 423, 487, 491, 500, 593.)

Finally, as the ALJ noted, medication successfully controlled Plaintiff's heart condition. (AR 16.) Plaintiff's treatment records repeatedly show that since starting medication, her chronic palpitations were "minimal," "improved," or "markedly improved." (AR 451, 457, 460, 466.) The record's indication that medication effectively controlled Plaintiff's palpitations is not inconsistent with Dr. Kanner's report. *See*

*generally Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"), citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).

### 2. Dr. Kanner's Silence on Lightheadedness and Fatigue

Plaintiff also claims that Dr. Kanner's failure to account for her symptoms of reoccurring lightheadedness and fatigue renders the doctor's assessment unreliable. It bears noting that Dr. Kanner's report contains extensive self-reported complaints from Plaintiff herself, but it does not mention lightheadedness or fatigue. (AR 335-37.) The fact that the thorough report does not contain reports of dizziness or lightheadedness is telling. Although Plaintiff attempts to assign blame for this omission to Dr. Kanner, it is just as likely that Plaintiff did not report these symptoms to Dr. Kanner.

In any event, regardless of whether Plaintiff failed to report these symptoms or Dr. Kanner omitted them, Plaintiff's prior treatment records do not support Plaintiff's contention that the exclusion of lightheadedness or fatigue from Dr. Kanner's report renders it unreliable. The records show that Plaintiff denied both lightheadedness and dizziness in the past (AR 451, 546, 552), and that her lightheadedness had "markedly improved" and become less frequent since starting medication (AR 460, 559, 565). Indeed, these symptoms were described at one point as "likely benign." (AR 460.) And elsewhere, Plaintiff reported that she had "mild episodes of lightheadedness only every one to 2 weeks." (AR 457.) Similarly, Plaintiff's records show that upon examination, she had no excessive fatigue. (AR 352, 356, 358, 420, 513, 592, 594.) Thus, contrary to Plaintiff's contention, the record does not establish an unequivocal history of uncontrolled lightheadedness and fatigue. Accordingly, Dr. Kanner's report was not rendered unreliable because it did not contain these symptoms.

18-CV-908-JLS(WVG)

### 3. Conclusion

The ALJ did not err in relying on Dr. Kanner's opinions, which did not conflict with the medical records. Because the ALJ's conclusion is rational and was supported by the record, the Court should affirm the ALJ's decision.

### C. Plaintiff is Not Entitled to Summary Judgment

Based on the foregoing recommendation that Defendant's Cross-MSJ be GRANTED, this Court necessarily recommends that Plaintiff's MSJ be DENIED.

## V. CONCLUSION

This Court RECOMMENDS that Plaintiff's MSJ be DENIED and that Defendant's Cross-MSJ be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that **no later than July 12, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties **no later than July 29, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: June 21, 2019

Hon. William V. Gallo
United States Magistrate Judge